## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

JCAI INC., an Ontario Corporation, and JCAI AMERICA INC., a Delaware Corporation,

        Plaintiffs,

    v.

WISELEAP SOLUTIONS INC., a Canadian Corporation, and EMYODE SERVICES CONSEILS INC., a Canadian Corporation,

        Defendants.

Civil Action No. _____

**JURY TRIAL DEMANDED**

## COMPLAINT FOR PATENT INFRINGEMENT

JCAI Inc. and JCAI America Inc. (collectively, "Plaintiffs"), by and through their undersigned attorneys, file this Complaint against Defendants Wiseleap Solutions Inc. ("Wiseleap") and Emyode Services Conseils Inc. ("Emyode") and hereby allege as follows:

1.    This is an action for patent infringement under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, whereupon the Plaintiffs allege that the Defendants infringe United States Patent No. 9,828,115 (the "'115 Patent").

2.    JCAI Inc. was founded in 2008 at Mississauga, Ontario, Canada. Soon after its incorporation, JCAI Inc. began developing advanced communications systems to form a turnkey platform of surface guidance equipment, management software, and sophisticated information collection systems. JCAI Inc. immediately sought patent protection for its innovative technologies, which was granted through the '115 Patent.

1

3. The '115 Patent discloses inventive systems and methods for coordinating removal of contamination from the surface of an aircraft. The systems and methods involve the ability to receive a contamination removal request, to direct an aircraft and contamination removal personnel to a location, and the tracking of the contamination removal, among other features. The Plaintiffs practice the invention of the '115 Patent in their Icelink® De-icing Management System product ("Icelink"), which was first introduced in May 2014. Since that time, Plaintiffs have continually maintained and offered Icelink to customers. By and through the practice of the claims of the '115 Patent, Plaintiffs' innovations, and in particular Icelink, have revolutionized the coordination of aircraft deicing.

4. The founder and president of the Plaintiff corporations, Jeffery Campbell, is a named inventor on the '115 Patent. Mr. Campbell is responsible for the overall strategic direction of Plaintiffs and has been involved in developing hardware and software optimization systems to meet the climatic and operational demands of airport environments.

5. Mr. Campbell studied and identified limitations in conventional practices in the field while developing the technology covered by the '115 Patent. Conventional methods were commonly distracting to both aircraft operators and air traffic controllers, and were prone to miscommunication, inaccuracies and inefficiencies.

6. Mr. Campbell recognized that coordinating removal of contamination from surfaces of aircraft could be improved using novel methods and systems combining both software and hardware components. The systems and methods disclosed in the '115 Patent reflect Mr. Campbell's innovative approach to modernizing deicing. The methods and systems of the '115 Patent confer multiple benefits over conventional methods for coordinating removal of

2

contamination from surfaces of aircraft, including reducing the amount of distracting radio chatter and obviating paper record keeping.  The invention greatly reduces the risks of miscommunication during this vital time of pre-flight safety and makes the aircraft contamination removal process significantly more efficient. These benefits have been recognized throughout the deicing industry (*see, e.g.*, **Exhibit B** (Airport Improvement, "O'Hare Moves Aircraft Deicing From Gates to High-Tech Centralized Facility", March/April 2021, https://airportimprovement.com/digital-edition/pdfs/airportimprovement_202103.pdf) and **Exhibit C** (Airport Improvement, "New Centralized Deicing Facility keeps passengers and packages moving at Memphis Int'l", March/April 2023, https://airportimprovement.com/digital-edition/2023-03/?page=8)) and have contributed to the Plaintiffs' commercially successful business.

## THE PARTIES

7.      Plaintiff JCAI Inc. is an Ontario corporation having a principal place of business at 100 McGovern Drive, Cambridge, Ontario, N3H 4R7. JCAI is in the business of, among other things, developing and selling innovative software solutions for airports and related organizations, including proprietary software that monitors and facilitates aircraft movement through deicing areas, and that is integrated with deicing trucks and other equipment for data collection.

8.      Plaintiff JCAI America Inc. is a Delaware corporation having a registered office at 3411 Silverside Road, Tatnall Building #104, Wilmington, New Castle, Delaware, 19810. JCAI America is in the business of, among other things, marketing and selling the software solutions of JCAI to customers in the United States. JCAI America is a subsidiary of JCAI and a licensee of the '115 Patent.

9. On information and belief, Defendant Wiseleap is a Canadian corporation having a principle place of business at 38, Place du Commerce (Bureau 11-110), Île-des-Soeurs, Quebec, H3E 1T8. Wiseleap is in the business of making and selling deicing management software, including the Infringing Products described below.

10. On information and belief, Defendant Emyode is a Canadian corporation having a principle place of business at 38, Place du Commerce (Bureau 11-110), Île-des-Soeurs, Quebec, H3E 1T8. Emyode is in the business of making and selling deicing management software, including the Infringing Products described below in coordination with Wiseleap. *See, e.g.*, **Exhibit E** (Emyode Case Studies, https://emyode.com/en/case-studies/application-modernization-complete-rollout-of-an-azure-cloud-based-solution/ (accessed May 26, 2023).)

## JURISDICTION AND VENUE

11. This action arises under the Patent Law of the United States, 35 U.S.C. § 1 *et seq*., including §§ 271, 281, 283, 284, and 285. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

12. On information and belief, Defendants have offered and continue to offer their accused products and services in the Commonwealth of Virginia. On information and belief, Defendants have offered and continued to offer their accused products and services at airports, including Dulles International Airport in Dulles, VA, within this judicial district.

13. Venue is proper in this Court under 28 U.S.C. §§ 1391(b), (c), and (d), as well as 28 U.S.C. § 1400(b), because, on information and belief, Defendants have committed acts within this district giving rise to this action and does business in this district, including using, selling, offering for sale, and providing service and support for its customers.

14.    The Court has personal jurisdiction over Defendants pursuant to Federal Rule of Civil Procedure 4(k)(2).  On information and belief, Defendants are not subject to jurisdiction in any state's courts of general jurisdiction, and exercising jurisdiction over Defendants in the Eastern District of Virginia is consistent with the United States Constitution and laws.

15.    On information and belief, Defendants have established, and will continue to maintain, minimum contacts with this judicial district such that the exercise of jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice.

## THE PATENT-IN-SUIT

16.    The '115 Patent, titled "Method and System for Coordinating Removal of Contamination from Surface of Aircraft," duly and legally issued on November 28, 2017, from an application filed September 12, 2014, and which claims priority to U.S. Provisional Application No. 61/877,400, filed September 13, 2013, and U.S. Provisional Application No. 61/953,208, filed March 14, 2014. A true and correct copy of the '115 Patent is attached as **Exhibit A**.

17.    The '115 Patent generally relates to a method and system for coordinating removal of contamination from the surface of an aircraft. More particularly, various aspects of the invention of the '115 Patent are defined in the claims of the '115 Patent.

18.    Before the '115 Patent, conventional ways to coordinate and monitor the deicing of aircrafts relied on radio communication and paper records, methods that were prone to errors and created distractions for both aircraft pilots and air traffic controllers.  (Ex. A, '115 Patent at 5:40-44, 7:14-17.)  Since the deicing of an aircraft is part of the safety protocol before an aircraft flight, any inaccuracies or errors during this time posed a significant safety concern.  (*Id*. at 5:44-46.)

19.     In particular, the invention of the '115 Patent reduces the possibility for miscommunication during the aircraft contamination removal process, such as during the deicing, and significantly reduces the amount of distracting radio chatter for pilots and air traffic controllers.  (*Id*. at 7:14-16.)  The invention greatly increases the efficiency of aircraft contamination removal that was not available previously, permitting aircraft pilots to monitor and communicate with the contamination removal activities in real-time and making the contamination removal safer and more effective. (*See, e.g.*, *id*. at 7:41-49 ("In one embodiment, the pilot device includes a set of radio buttons allowing the pilot to signal that the brakes are set and that the aircraft is configured and set for contamination removal.  The coordination module may then send instruction to the CTM device  and the contamination removal device to display this status indication. In this way, there is no miscommunication of the readiness of the aircraft for contamination removal."); *see also id*. at 7:54-63 ("When the aircraft is ready, the contamination removal personnel 'sign up' to treat the aircraft and notify the de-icing module by inputting it on the contamination removal device. In this way, there is no miscommunication about what the contamination removal personnel have to treat and whether the contamination removal personnel are ready to do so.").)

20.     JCAI Inc. is the owner and assignee of all right, title and interest in and to the '115 Patent, including the right to assert all causes of actions arising under said patent and to seek damages and all other remedies for the infringement thereof.

## THE ACCUSED PRODUCT

21.     Plaintiffs compete in the same market and for the same customers as the Defendants. The continued overlap in the same market space by the Defendants' infringing products and services creates a substantial burden to the Plaintiffs' ability to offer its patented products and services to customers in the same space.

22.    At a time known to Defendants, but in any event after March 19, 2015, on information and belief, Defendants have engaged and continued to engage in the manufacture, use, sale, offer for sale, exportation and inducement to use of deicing management software and/or products that is/are able to electronically coordinate and/or monitor aircraft deicing (the "Accused Products").

23.    On information and belief, the Accused Products comprise a system and method as claimed in the '115 Patent, and as particularized below. On information and belief, Defendants have also made, tested, used, and implemented at and offered to sell or sold to numerous airports and related organizations across North America, including in the United States, additional instances of the Accused Products. On information and belief, additional Accused Products beyond those identified above are within the knowledge of the Defendants and are not currently known to the Plaintiffs.

24.    One example of the Accused Products consists of the deicing management software product made for, offered for sale and/or sold at Dulles International Airport. On information and belief, Plaintiffs and Defendants both received and responded to a November 15, 2018 Request for Proposal ("RFP") for the coordination of aircraft deicing at Dulles International Airport. The RFP set out certain technical requirements for the desired deicing solution, as there was a long felt need in the market for a system covered by the '115 Patent. At the time of issuance, the Plaintiffs' Icelink product was capable of meeting the requirements set out in the RFP without significant modification. Despite the apparent suitability of the Icelink product, the Plaintiffs' initial bid in response to the RFP was not successful. For reasons not fully known to the Plaintiffs, the Plaintiffs later learned that the Defendants had been awarded the contract arising from the RFP.

25.    Notwithstanding the above, the issuer of the RFP reengaged with Plaintiffs to fulfill the requirements of the RFP. In December 2022, approximately four years since the issuance of the

RFP, Plaintiffs were awarded a system-wide contract by the issuer of the RFP. On information and belief, Defendants' Accused Products and Plaintiffs' Icelink practicing product were the two systems of those considered for the RFP that were deemed to match the requirements of the RFP and made the subject of further evaluation and testing through a proof of concept process. Defendants' improper competition for the RFP, using the Accused Products, resulted in Plaintiffs having to suppress their prices to remain competitive. But for Defendants' infringing activities, this price suppression would not have occurred.

26.     On July 5, 2021, Plaintiffs sent a letter notifying Defendants that it had come to Plaintiffs' attention that Emyode and its subsidiary, Wiseleap, had made, used and were selling a method and system that infringes the '115 Patent. In their letter, Plaintiffs requested that Defendants immediately cease and desist from any and all infringing activities and advise Plaintiffs of the details of Defendants' past activities. Accordingly, Defendants have had notice of the '115 Patent since at least as early as July 5, 2021.

27.     Defendants responded to Plaintiffs' letter on July 30, 2021.  The Defendants' response failed to provide any of the information requested in the Plaintiffs' July 5, 2021 letter.

28.     Plaintiffs responded on August 23, 2021, noting that Defendants had failed to address Plaintiffs' allegations and requests for information. The August 23, 2021 letter further heightened Plaintiffs' concern regarding Defendants' deployment, or pending deployment, of their accused deicing management software at Dulles International Airport. Plaintiffs' correspondence reiterated each and every one of the demands in their July 5, 2021 letter. Defendants did not respond satisfactorily to Plaintiffs' second letter.

29.    On September 9, 2021, Plaintiffs commenced an action in the Federal Court of Canada, alleging infringement of the Canadian equivalent patent to the '115 Patent (the "Canadian Action"). The parties to the Canadian Action are the same, with the exception of JCAI America Inc., which is not a party in the Canadian Action. The Canadian Action is currently scheduled for a 12-day trial beginning November 20, 2023.

## COUNT I: INFRINGEMENT OF THE '115 PATENT

30.    Plaintiffs incorporate herein by reference the allegations found in paragraphs 1-29 above.

31.    On information and belief, Defendants have been and are now directly infringing the '115 Patent in violation of 35 U.S.C. § 271(a) at least by making, using, selling, offering or sale, and/or importing into the United States the Accused Products. The Accused Products practice one or more claims of the '115 Patent, including at least representative claims 10-14 and 17.

32.    Claim 10 recites:

> **[10pre]** A system for coordinating contamination removal off a surface of an aircraft by contamination removal personnel, the system comprising:
>
> **[10a]** a request module adapted to receive a request for contamination removal;
>
> **[10b]** a coordination module adapted to direct the aircraft and the contamination removal personnel to a physical location within an airport for contamination removal; and
>
> **[10c]** a de-icing module adapted to track the contamination removal treatment
>
> **[10d]** wherein request for contamination removal includes at least one of desired deicing treatment, fluid to be used or aircraft surface to be treated.

9

33.     On information and belief, the Accused Products provide a system for coordinating contamination removal off a surface of an aircraft by contamination removal personnel, in a manner that satisfies element [10pre] of the '115 Patent. For example, the Accused Product is a cloud-based software program comprised of a web application and a mobile application that may coordinate aircraft deicing. *See, e.g.*, Wiseleap Vimeo, "Deicing manager" (video), https://vimeo.com/66244346; Wiseleap Vimeo, "Creating Deice logs on Deicing Manager" (video), https://vimeo.com/470698819; Wiseleap Vimeo, "Training Video of Deicing Manager and the Dispatch Tool" (video), https://vimeo.com/477712426; and **Exhibit D** (Airline Routes and Ground Services, Eddie Saunders, "Wiseleap Adds a Dispatch Feature to Deicing Manager", 9 October 2020, https://airlinergs.com/wiseleap-adds-a-dispatch-feature-to-deicing-manager/).

34.     On information and belief, the Accused Products provide a request module adapted to receive a request for contamination removal, in a manner that satisfies element [10a] of the '115 Patent. For example, the Accused Products may include a Dispatch Module and/or a Deice Log that can receive a request for aircraft deicing. The request for deicing may include the desired de-icing treatment, fluid to be used or aircraft surface to be treated. The request may also include identifying information about the aircraft and/or desired deicing treatment. *See*, *e.g.*, Wiseleap Vimeo, "Training Video of Deicing Manager and the Dispatch Tool" (video), https://vimeo.com/477712426 from 3:59 to 5:34, which shows an interface for receiving details regarding a request for contamination removal, including assignment of a particular deicing truck to a particular aircraft at a particular location (gate), and the desired deicing treatment ("Ice Check") (screenshot at 5:34).



35.    On information and belief, the Accused Products provide a coordination module adapted to direct the aircraft and the contamination removal personnel to a physical location within an airport for contamination removal, in a manner that satisfies element [10b] of the '115 Patent. For example, the Accused Products may include the Dispatch Module and/or the Pad Dashboard Module that can direct the aircraft and the deicing personnel to a physical location within an airport for deicing. The Dispatch Module may be used to create a deicing task at a specific location to be performed by specific deicing personnel. *See*, *e.g.*, Wiseleap Vimeo, "Training Video of Deicing Manager and the Dispatch Tool" (video), https://vimeo.com/477712426 from 5:35 to 17:53 , which shows an interface where a particular deicing truck has been assigned to a particular aircraft at a particular location (gate) (screenshots at 9:04 and 13:39), and this information being communicated to the mobile application (screenshot at 14:19).







*See also, e.g.*, Wiseleap, "Deicing Manager", https://wiseleap.com/deicing-manager, which shows

a tablet interface displaying the Pad Dashboard Module with an aerial view of an apron with three

aircraft assigned to particular locations (gates).



36.     On information and belief, the Accused Products provide a de-icing module adapted to track the contamination removal treatment, in a manner that satisfies element [10c] of the '115 Patent. For example, the Accused Products may include a Deice Log where deicing personnel can enter information about the aircraft and the deicing treatment (*e.g.*, the segment(s) of the aircraft that has been deiced, types(s) of deicing chemicals used, and volumes of deicing chemicals sprayed). The Deice Log may be accessible on the web application and/or the mobile application of the Accused Products. *See*, *e.g.*, Wiseleap Vimeo, "Training Video of Deicing Manager and the Dispatch Tool" (video), https://vimeo.com/477712426 from 5:35 to 17:53, which shows the Deice Log on the mobile application's tracking of, *e.g.*, the segment(s) of the aircraft that has been deiced, types(s) of deicing chemicals used, and volumes of deicing chemicals sprayed (screenshots at 10:24, 11:17, 12:02, and 12:10).

 

15

 

The Deice Log can be used to track the start and stop spray times and tank volumes for Type I and Type IV deicing fluids. *See*, *e.g.*, Wiseleap Vimeo, "Training Video of Deicing Manager and the Dispatch Tool" (video), https://vimeo.com/477712426 from 33:33 to 35:00, which shows Deice Log on the mobile application's tracking of start and stop tank volumes for Type I deicing fluid being entered into the Deice Log. The Deice Log, which may be accessed via the mobile application, automatically calculates total spray volume after start and stop volumes have been entered. When a new Deice Log is started the starting tank volume is the volume from the previous Deice Log (screenshot at 34:40).

16



37.    On information and belief, the request for contamination removal includes at least one of desired deicing treatment, fluid to be used or aircraft surface to be treated, in a manner that satisfies element [10d] of the '115 Patent. For example, the Accused Products may include a Dispatch Module and/or a Deice Log that can receive a request for aircraft deicing. The request for deicing may include the desired de-icing treatment, fluid to be used or aircraft surface to be treated. The request may also include identifying information about the aircraft and/or desired deicing treatment. *See, e.g.*, Wiseleap Vimeo, "Training Video of Deicing Manager and the Dispatch Tool" (video), https://vimeo.com/477712426 from 3:59 to 5:34, which shows an interface for receiving details regarding a request for contamination removal, including assignment of a particular deicing

17

truck to a particular aircraft at a particular location (gate), and the desired deicing treatment ("Ice Check") (screenshot at 5:34).



38.    Claim 11 recites:

> The system of claim 10 wherein the coordination module is further adapted to notify the contamination removal personnel when the aircraft is ready for the contamination removal treatment.

39.    On information and belief, with respect to the coordination module, the system of the Accused Products is further adapted to notify the contamination removal personnel when the aircraft is ready for the contamination removal treatment. Therefore, the system of the Accused Products infringes claim 11 of the '115 Patent. For example, the Accused Products may include the Dispatch Module and mobile application that can be used to notify deicing personnel that they have been assigned a deicing task. Deicing personnel assigned the deicing task receive a

18

notification on the mobile application. *See*, *e.g.*, Wiseleap Vimeo, "Training Video of Deicing Manager and the Dispatch Tool" (video), https://vimeo.com/477712426 from 8:17 to 9:33, which shows a notification transmitted at the top of the screen (white rectangular box covering the blue header) (screenshot at 9:07).



40.    Claim 12 recites:

> The system of claim 10 wherein the coordination module is further
> adapted to provide the contamination removal requirements of the
> aircraft to the contamination removal personnel.

41.    On information and belief, with respect to the coordination module, the system of the Accused Products is further adapted to provide the contamination removal requirements of the aircraft to the contamination removal personnel. Therefore, the system of the Accused Products infringes claim 12 of the '115 Patent. *See*, *e.g.*, the particulars set out above with respect to the

Dispatch Module's assignment of a particular deicing truck to a particular aircraft at a particular location (gate), and the desired deicing treatment ("Ice Check"), as well as the notification of a deicing task to deicing personnel.

42. Claim 13 recites:

> The system of claim 10 wherein the de-icing module is further adapted to notify when segments of the aircraft de-icing have been completed.

43. On information and belief, with respect to the de-icing module, the system of the Accused Products is further adapted to notify when segments of the aircraft de-icing have been completed. Therefore, the system of the Accused Products infringes claim 13 of the '115 Patent. For example, the Accused Products may include a Deice Log where deicing personnel can enter information about, *inter alia,* the segment(s) of the aircraft that has been deiced. The Deice Log may be accessible on the web application and/or the mobile application of the Accused Products. When the Deice Log is "saved" on the mobile application, the "Deicing Status" changes to "Completed" on the web application. *See*, *e.g.*, Wiseleap Vimeo, "Training Video of Deicing Manager and the Dispatch Tool" (video), https://vimeo.com/477712426 from 12:18 to 13:04, which shows the Deice Log being "saved" on the mobile application and the "Deicing Status" changing to "Completed" on the web application (screenshots at 12:22 and 12:28).





44.    Claim 14 recites:

> The system of claim 10 wherein the de-icing module is further adapted to track the quantity of de-icing chemical used.

45.    On information and belief, with respect to the de-icing module, the system of the Accused Products is further adapted to track the quantity of de-icing chemical used. Therefore, the system of the Accused Products infringes claim 14 of the '115 Patent. For example, the Accused Products may include a Deice Log where deicing personnel can enter information about, *inter alia,* the volumes of deicing chemicals sprayed. The Deice Log may be accessible on the web application and/or the mobile application of the Accused Products. The Deice Log can be used to track the start and stop spray times and tank volumes for Type I and Type IV deicing fluids.  *See*, *e.g.*, Wiseleap Vimeo, "Training Video of Deicing Manager and the Dispatch Tool" (video), https://vimeo.com/477712426 from 33:33 to 35:00, which shows start and stop tank volumes for Type I deicing fluid being entered into the Deice Log. The Deice Log automatically calculates total spray volume. When a new Deice Log is opened, the starting tank volume is the volume from the previous Deice Log (screenshot at 34:40).



46.    Claim 17 recites:

> The system of claim 10 wherein contamination removal treatment
> comprises de-icing or anti-icing.

47.    On information and belief, with respect to contamination removal treatment, the system of

the Accused Products comprises de-icing or anti-icing. Therefore, the system of the Accused

Products infringes claim 17 of the '115 Patent. For example, the Accused Products may include

the Dispatch Module that can receive a request for aircraft deicing. The request for deicing may

include identifying information about the aircraft provided by an external database and the desired

deicing treatment. *See*, *e.g.*, Wiseleap Vimeo, "Training Video of Deicing Manager and the

Dispatch Tool" (video), https://vimeo.com/477712426 from 3:59 to 5:34, which shows an

interface for receiving details regarding a request for contamination removal, including assignment

of a particular deicing truck to a particular aircraft at a particular location (gate), and the desired

deicing treatment ("Ice Check") (screenshot at 5:34).



As a further example, the Accused Products may include a Deice Log where deicing personnel can

enter information about the aircraft and the deicing treatment (*e.g.*, the segment(s) of the aircraft

that has been deiced, types(s) of deicing chemicals used, and volumes of deicing chemicals

sprayed). The Deice Log may be accessible on the web application and/or the mobile application

of the Accused Products. *See*, *e.g.*, Wiseleap Vimeo, "Training Video of Deicing Manager and the

Dispatch Tool" (video), https://vimeo.com/477712426 from 5:35 to 17:53), which shows tracking

of, *e.g.*, the segment(s) of the aircraft that has been deiced, types(s) of deicing chemicals used, and

volumes of deicing chemicals sprayed (screenshot at 12:10).

24



48.     The Defendants have committed infringing acts without authorization, consent, permission or a license from the Plaintiffs.

49.     On information and belief, Defendants have also induced and continue to induce infringement of at least representative claims 10-14 and 17 of the '115 patent pursuant to 35 U.S.C. § 271(b), by actively and knowingly inducing, directing, causing, and encouraging others, including, but not limited to, their customers and/or end users, to make, use, sell, and/or offer to sell in the United States the Accused Product.

50.     On information and belief, Defendants' customers and/or end users have directly infringed and are directly infringing at least representative claims 10-14 and 17 of the '115 patent.

Defendants have actively encouraged, educated, and instructed their customers and/or end users to use the Accused Product at airport locations within the United States, and therefore Defendants have knowingly induced their customers and/or end users to directly infringe the '115 patent. Defendants have acted and continue to act with the specific intent to encourage such infringement by customers and/or end users, and knowing that the induced acts by these customers and/or end users constitute infringement of the '115 patent. On information and belief, Defendants' inducement includes, for example, providing operational instructions, manuals, technical specifications, demonstrations, training, and other forms of support and instructions that induce their customers and/or end users to directly infringe the '115 patent.

51. Defendants' infringement is literal, under the doctrine of equivalents, or both.

52. Defendants will continue to infringe the '115 Patent, causing irreparable harm to Plaintiffs for which there is no adequate remedy at law unless and until enjoined by this Court. Defendants' infringement has caused and continues to cause irreparable harm to Plaintiffs in the form of loss of business opportunities, lost sales, loss of market share, loss of goodwill, price suppression, and the loss of Plaintiffs' exclusive right to practice the inventions.

53. As a result of Defendants' infringement of the '115 Patent, Plaintiffs have suffered damages and are owed no less than a reasonable royalty under 35 U.S.C. § 284 as a remedy.

## **JURY TRIAL DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury of all issues so triable.

26

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs respectfully request that this Court enter judgment in their favor and grant the following relief:

a)  a judgment that Defendants have directly and/or indirectly infringed one or more claims of the '115 Patent;

b)  a permanent injunction against Defendants and their respective officers, directors, agents, branches, subsidiaries, parents, partners, and any others active in concert with Defendants from further infringement of the '115 Patent;

c)  a judgment and order requiring Defendants to pay Plaintiffs past and future damages under 35 U.S.C. § 284, including any supplemental damages arising from any continuing post-verdict infringement between the time of the trial and entry of the final judgment with an accounting, as needed;

d)  a judgment and order requiring Defendants to pay Plaintiffs no less than reasonable royalties after the final judgment if a permanent injunction is not granted;

e)  a judgment and order requiring Defendants to pay Plaintiffs pre-judgment and post-judgment interest on any damages award;

f)  a judgment and order that Defendants' infringement of the '115 Patent be found willful and that the Court award treble damages pursuant to 35 U.S.C. § 284;

g)  a judgment that this case is exceptional under 35 U.S.C. § 285 and an order that Defendants pay the Plaintiffs their attorneys' fees incurred in prosecuting this action;

h)  a judgment and order requiring Defendants to pay Plaintiffs' costs and expenses incurred in this action; and

i)  any further relief, including equitable relief, as the Court may deem just and proper.

Respectfully submitted,

**FISH & RICHARDSON P.C.**

Dated:  May 26, 2023

By:   */s/ Ahmed J. Davis*

Ahmed J. Davis (Va. Bar No. 43982)
adavis@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, SW, Suite 1000
Washington, DC 20024
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

Jason W. Wolff (*Pro Hac Vice* to be filed)
wolff@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Phone: (858) 678-5070
Fax: (858) 678-5099

Jeremy T. Saks (*Pro Hac Vice* to be filed)
saks@fr.com
FISH & RICHARDSON P.C.
7 Times Square, 20th Floor
New York, NY 10036
Tel: (212) 765-5070
Fax: (212) 258-2291

*Counsel for Plaintiffs* JCAI INC. and JCAI AMERICA INC.

28